# EXHIBIT A

# STATE NATIONAL INSURANCE COMPANY

**8200 ANDERSON BOULEVARD**
**FORT WORTH, TX 76120**
**(817) 265-2000   (800) 877-4567**

**Renewal of:** SLA0012034                                      **Policy No.:** SLA0015444

## LAWYERS PROFESSIONAL LIABILITY INSURANCE

## DECLARATIONS

NOTICE:   EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THIS POLICY IS WRITTEN ON A CLAIMS MADE BASIS AND COVERS ONLY THOSE CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE COMPANY PURSUANT TO THE TERMS HEREIN.  THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED AS DEFENSE COSTS.  PLEASE READ CAREFULLY.

Item 1.  **Named Insured:**   Peter T. Clark, P.C.
                                           Law Offices of
    **Mailing Address:**
        Street:   200 Chauncy Street Suite 100
        City:   Mansfield
  State and Zip Code:   MA 02048

Item 2.  **Limits of Liability:**   (A)   $ 1,000,000          each CLAIM, including CLAIMS EXPENSE

                     (B)   $ 2,000,000          Annual Aggregate, including CLAIMS EXPENSE

Item 3.  **Deductible:**                $ 2,500          Deductible per CLAIM and AGGREGATE

Item 4.  **Policy Period:**   **From:**   03/16/2010   **To:**   03/16/2011
                    at 12:01 A.M. Standard Time at the mailing address shown above.

Item 5.  **Premium:** $3,890

Item 6.  **Retroactive Date:** See CVX-LAW-266 (04/05)

Item 7.  **Endorsements:**        **(SEE ATTACHED SCHEDULE OF FORMS AND ENDORSEMENTS)**

CVX-LAW-DEC-114 (12/2004)

SNIC000001

# STATE NATIONAL INSURANCE COMPANY

## SCHEDULE OF POLICY FORMS AND ENDORSEMENTS

Form(s) and Endorsement(s) made a part of this policy at time of issue:

| Form Number | Edition Date | Description |
|---|---|---|
| CVX-LAW-100 (12/04) - LAWYERS PROFESSIONAL LIABILITY INSURANCE | | |
| CVX-LAW-146 (12/04) - TERRORISM EXCLUSION | | |
| CVX-LAW-147 (12/04) - WAR EXCLUSION | | |
| CVX-LAW-182 (12/04) - ELECTRONIC DATA AND CYBER RISK EXCLUSION | | |
| CVX-LAW-262 (12/04) - PRIOR AND PENDING LITIGATION ENDORSEMENT | | |
| CVX-LAW-266 (04/05) - RETROACTIVE DATE ENDORSEMENT | | |
| CVX-LAW-278 (12/04) - OFFICE SHARING EXCLUSION ENDT | | |
| CVX-LAW-288 (12/04) - DAMAGES DEFINITION CHANGE | | |
| CVX-LAW-9 (12/04) - SERVICE OF SUIT CLAUSE | | |
| CVX-LAW-DEC-100 (12/04) - IN WITNESS CLAUSE | | |
| IL 00 21 (07/02) - NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT | | |

CVX-LAW-SCH-100 (12/2004)

SNIC000002

# STATE NATIONAL INSURANCE COMPANY

**IN WITNESS CLAUSE**

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

_____      _____
Secretary                                         President

CVX-LAW-DEC-100 (12/2004)

SNIC000003

# STATE NATIONAL INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## TERRORISM EXCLUSION

This endorsement modifies Insurance provided under the following:

### LAWYERS PROFESSIONAL LIABILITY COVERAGE PART

Notwithstanding any other provision of this policy to the contrary, this insurance does not apply to any loss, cost, expense, damage, injury or economic detriment, whether arising by contract, operation of law or otherwise, whether or not concurrent or in any sequence with any other cause or event, that in any way, form or manner, directly or indirectly, arises out of, results from or is caused by "terrorism," and also including any action taken in hindering or defending against "terrorism."

"Terrorism" means any act of force or violence or other illegal means, whether actual, alleged or threatened, by any person, persons, group, private or governmental entity or entities, or any other type of organization of any nature whatsoever, whether the identity of which is known or unknown, that appears to be for political, religious, racial, ethnic, ideological, ecological or social purposes, objectives or motives and that causes or appears to be intended to cause:

1.  alarm, fright, fear of danger, concern or apprehension for public safety;

2.  the interference or disruption of an electronic, communication, information or mechanical system;

3.  the intimidation or coercion of the civilian population, or any governmental body; or

4.  the alteration of the policies, foreign or domestic of any governmental body.

This exclusion does not affect the applicability of, and is in addition to, any exclusion of war, warlike or military action, whether or not specifically denominated as such.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of policy.)

Endorsement effective                     Policy No.                                Endorsement No.

Named Insured

Countersigned by _____
(Authorized Representative) – NOT APPLICABLE TO MASSACHUSETTS

CVX-LAW-146(12/2004)

SNIC000004

# STATE NATIONAL INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## WAR EXCLUSION

This endorsement modifies Insurance provided under the following:

**LAWYERS PROFESSIONAL LIABILITY COVERAGE PART**

Any exclusion of war, warlike or military action whether or not specifically denominated as such, is deleted and replaced by the following:

> Notwithstanding any provision of this policy to the contrary, this insurance does not apply to injury, damage, loss, cost or expense, due to war, whether or not declared, or any act or condition incident to war.  War includes civil war, insurrection, rebellion, revolution or action taken by governmental authority in hindering or defending against any of these.

This exclusion does not affect the applicability of, and is in addition to, any exclusion of terrorism, whether or not specifically denominated as such.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of policy.)

Endorsement effective                    Policy No.                              Endorsement No.

Named Insured

Countersigned by _____

(Authorized Representative)

CVX-LAW-147(12/2004)

SNIC000005

# STATE NATIONAL INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## ELECTRONIC DATA AND CYBER RISK EXCLUSION

This endorsement modifies Insurance provided under the following:

**LAWYERS PROFESSIONAL LIABILITY COVERAGE PART**

We will not pay for injury or damage, directly or indirectly, arising out of, caused by, contributed to by, or resulting from any:

1.  Functioning, nonfunctioning, malfunctioning, availability, or nonavailability of:

    a.  the internet or similar facility; or

    b.  any intranet or private network or similar facility; or

    c.  any website, bulletin board, chat room, search engine, portal or similar third party application service.

2.  Alteration, corruption, destruction, distortion, erasure, theft or other loss of or damage to data, software, information repository, microchip, integrated system or similar device in any computer equipment or non-computer equipment or any kind of programming or instruction set.

3.  Loss of use or functionality, whether partial or entire, of data, coding, program, software, any computer or computer system or other device dependent upon any microchip or embedded logic and any ensuing inability or failure of the insured to conduct business.

This exclusion supplements any exclusion elsewhere in the policy.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of policy.)

Endorsement effective                    Policy No.                              Endorsement No.

Named Insured

Countersigned by _____
(Authorized Representative) – NOT APPLICABLE TO MASSACHUSETTS

CVX-LAW-182 (12/2004)

SNIC000006

# STATE NATIONAL INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## OFFICE SHARING EXCLUSION ENDORSEMENT

This endorsement modifies Insurance provided under the following:

**LAWYERS PROFESSIONAL LIABILITY COVERAGE PART**

This policy does not apply to any CLAIM arising out of any WRONGFUL ACTS of any entity that is not an INSURED under this policy, or with whom an INSURED shares common office space.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of policy.)

Endorsement effective                          Policy No.                               Endorsement No.

Named Insured

Countersigned by _____

(Authorized Representative) – NOT APPLICABLE TO MASSACHUSETTS

CVX-LAW-278 (12/2004)

SNIC000007

# STATE NATIONAL INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## DAMAGES DEFINITION CHANGE

This endorsement modifies Insurance provided under the following:

**LAWYERS PROFESSIONAL LIABILITY COVERAGE PART**

Paragraph III. of DEFINITIONS is deleted and replaced by the following:

III.   DAMAGES means the monetary and compensatory portion of any judgment, award or settlement, provided always that DAMAGES shall not include:

   A.   punitive damages, exemplary damages, fines, penalties, treble damages or any other increases in damages resulting from the multiplication of compensatory damages, fees, sanctions, fines, taxes or attorneys fees;

   B.   matters deemed uninsurable or against public policy;

   C.   any form of non-monetary relief;

   D.   DAMAGES rendered pursuant to the Racketeer Influenced and Corrupt Organizations Act of 1970 (commonly known as RICO), Title 18 U.S.C. Section 1960, et seq., or any similar federal or state statute or law;

   E.   the return of forfeiture of fees paid to the INSURED for PROFESSIONAL SERVICES;

   F.   interest in excess of the applicable limit of liability, which accrues on that part of any judgment within such limit.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of policy.)

Endorsement effective                      Policy No.                              Endorsement No.

Named Insured

Countersigned by _____
(Authorized Representative) – NOT APPLICABLE TO MASSACHUSETTS

CVX-LAW-288 (12/2004)

SNIC000008

IL 00 21 07 02

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

> COMMERCIAL AUTOMOBILE COVERAGE PART
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> FARM COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> PROFESSIONAL LIABILITY COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY COVERAGE PART
> UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

SNIC000009

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "Special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

SNIC000010

# STATE NATIONAL INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## PRIOR AND PENDING LITIGATION ENDORSEMENT

This endorsement modifies Insurance provided under the following:

**LAWYERS PROFESSIONAL LIABILITY COVERAGE PART**

In consideration of the premium paid, it is hereby understood and agreed that the Company has no duty to defend or indemnify an INSURED for, and this policy does not apply to any CLAIM based upon or arising out of any demand, suit or proceeding pending, or order, decree, settlement or judgment entered against the NAMED INSURED as of ___03/16/2006_____, or alleging or derived from the same or essentially the same facts as alleged in such pending or prior litigation or demand.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of policy.)

Endorsement effective                     Policy No. SLA0015444                          Endorsement No.

Named Insured

Countersigned by _____

                                      (Authorized Representative)

CVX-LAW-262 (12/2004)                                                        - NOT APPLICABLE TO MASSACHUSETTS

SNIC000011

# STATE NATIONAL INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## SERVICE OF SUIT CLAUSE

This endorsement modifies Insurance provided under the following:

### LAWYERS PROFESSIONAL LIABILITY COVERAGE PART

We appoint the highest state official in charge of insurance affairs (Commissioner of Insurance, Director of Insurance, Insurance Commissioner, Executive Secretary, Superintendent of Insurance, or such other official title as designated by the state) of the State of Massachusetts                              and his successor or successors in office as his and their duly authorized deputies, as our true and lawful attorney in and for the aforesaid State, upon whom all lawful process may be served in any action, "suit" or proceeding instituted in the said State by or on behalf of any insured or beneficiary against us arising out of this insurance policy, provided a copy of any process, "suit," complaint or summons is sent by certified or registered mail to:

COVERX CORPORATION

29621 NORTHWESTERN HWY.

SOUTHFIELD, MI. 48034

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of policy.)

Endorsement effective                    Policy No. SLA0015444                    Endorsement No.

Named Insured

Countersigned by _____

(Authorized Representative)

CVX-LAW-9 (12/2004)                                          - NOT APPLICABLE TO MASSACHUSETTS

SNIC000012

# STATE NATIONAL INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## RETROACTIVE DATE ENDORSEMENT

This endorsement modifies Insurance provided under the following:

**LAWYERS PROFESSIONAL LIABILITY COVERAGE PART**

In consideration of the premium paid, it is agreed that the policy is amended as follows:

> This policy does not apply to any CLAIMS or CLAIMS arising from, attributable to, or based upon any WRONGFUL ACT(S) committed or alleged to have been committed by the following lawyers prior to the corresponding retroactive date.

**NAME OF ATTORNEY AND RETROACTIVE DATE**
LAW OFFICES OF PETER T. CLARK, P.C., 3/1/2002

PETER T. CLARK, 3/1/2002
MICHELLE L. TIEWS, 5/17/2004

The retroactive date for any insured or former insured not specifically listed in this endorsement is: 03/16/2010

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of policy.)

Endorsement effective                    Policy No. SLA0015444                    Endorsement No.

Named Insured

Countersigned by _____

                                              (Authorized Representative)
CVX-LAW-266 (04/2005)                                              - NOT APPLICABLE TO MASSACHUSETTS

# STATE NATIONAL INSURANCE COMPANY

## LAWYERS PROFESSIONAL LIABILITY INSURANCE

THIS IS A CLAIMS MADE AND REPORTED POLICY WITH CLAIM EXPENSES INCLUDED WITHIN THE LIMITS OF LIABILITY. PLEASE READ THE ENTIRE POLICY CAREFULLY. THE COVERAGE OF THIS POLICY IS LIMITED TO LIABILITY ONLY TO THOSE CLAIMS FIRST MADE AGAINST THE INSURED AND REPORTED IN WRITING TO THE COMPANY DURING THE POLICY PERIOD OR EXTENDED REPORTING PERIOD, IF PURCHASED.

In consideration of the payment of the premium and in reliance upon the statements in the application and the supplements attached hereto and made a part hereof, and subject to all terms of the policy, the insurance company shown in the Declarations (herein called the Company) agrees with the NAMED INSURED as follows:

### INSURING AGREEMENTS

I.  **COVERAGE - PROFESSIONAL LIABILITY**

   A.   The Company shall pay on behalf of any INSURED all DAMAGES in excess of the deductible which any INSURED becomes legally obligated to pay as a result of CLAIMS first made against any INSURED during the POLICY PERIOD and reported to the Company in writing during the POLICY PERIOD or within sixty (60) days thereafter, by reason of any WRONGFUL ACT occurring on or after the RETROACTIVE DATE, if any. Coverage shall apply to any such CLAIMS arising out of the conduct of the INSURED'S profession as a Lawyer, or as a Lawyer acting in the capacity of an Arbitrator, Mediator, Neutral, Title Insurance Agent, Notary Public, member, director, officer of any Bar Association, its governing board or any of its committees, or as a member of a formal accreditation, ethics, peer review, licensing board, standards review or similar professional board or committee relating to the practice of law.

   B.   When an INSURED acts as an administrator, conservator, executor, guardian, trustee or in a similar fiduciary capacity, any INSURED'S WRONGFUL ACTS in such capacity shall be deemed for the purpose of paragraph I.A above to be the performance of professional services for others, in any INSURED'S capacity as a lawyer. This coverage shall not apply to any CLAIM against any INSURED as the beneficiary or distributee of any trust or estate.

II. **DEFENSE, INVESTIGATION AND SETTLEMENT OF CLAIMS**

   With respect to such insurance afforded by this policy, the Company shall:

   A.   have the right and duty to defend, including selection of counsel and arbitrators, in any INSURED'S name and on any INSURED'S behalf any CLAIM for DAMAGES against any INSURED, even if such CLAIM is groundless, false or fraudulent and shall have the right to make such investigation, negotiation and settlement, subject to 11.13 below, of any CLAIM as it deems expedient;

   B.   not settle any CLAIM without the written consent of the NAMED INSURED which consent shall not be unreasonably withheld. If however, the NAMED INSURED refuses to consent to a settlement recommended by the Company and elects to contest the CLAIM or continue legal proceedings in connection with such CLAIM, t he Company's liability for the CLAIM shall not exceed the amount for which the CLAIM could have been settled, including CLAIMS EXPENSES up to the date of such refusal, or the applicable limits of liability, whichever is less;

   C.   reimburse up to $500.00 to each INSURED for each day or part thereof for his or her attendance at the Company's request at trial or court-imposed hearing or arbitration proceeding involving a CLAIM, but the total amount so payable shall not exceed $10,000 per CLAIM. Any payments made by the Company under this provision will be in addition to the applicable limits of liability.  The deductible shall not apply to this provision.

   In any event, the Company shall not be obligated to pay any DAMAGES or defend or continue to defend any CLAIM after the limit of the Company's liability has been exhausted by payment of DAMAGES and/or CLAIM EXPENSES.

SNIC000014

III.     **DISCIPLINARY PROCEEDING**

If, during the POLICY PERIOD, a DISCIPLINARY PROCEEDING should commence against any INSURED, by reason of any WRONGFUL ACT occurring on or after the RETROACTIVE DATE, if any, the Company will indemnify the INSURED for reasonable fees, costs and expenses incurred in responding to such DISCIPLINARY PROCEEDING. The maximum amount payable, regardless of the number of DISCIPLINARY PROCEEDINGS or the number of INSUREDS, shall be $10,000 per POLICY PERIOD. The deductible shall not apply to this provision. Any payments made by the Company under this provision will be in addition to the applicable limits of liability. The Company shall not be obligated to pay any award, penalty, sanction, cost or order of restitution resulting from any DISCIPLINARY PROCEEDING.

IV.     **TERRITORY**

This policy applies to WRONGFUL ACTS that occur anywhere in the world provided CLAIM is made and suit or arbitration proceedings are brought against any INSURED in the United States of America, its territories or possessions or Canada.

## DEFINITIONS

I.     CLAIM means a demand made upon any INSURED for DAMAGES, including, bit not limited to, service suit or institution of arbitration proceedings against any INSURED.

II.     CLAIMS EXPENSES means:

A.     fees charges by any lawyer designated by the Company to defend the insured; and

B.     if authorized by the Company, all other fees, costs and expenses resulting from the investigation, adjustment, defense or appeal of any CLAIM, including but not limited to:

1.     all costs taxed against any INSURED and all interest which accrues after the entry of any judgment and before the Company has tendered or deposited, in court or otherwise, such judgment amount for which any INSURED is liable; and

2.     premiums on appeal bonds and premium on bonds to release attachments in such suits.  The Company shall have no obligation to provide such bonds.

3.     Claims Expenses shall not include salaries and expenses of regular employees or officers of the Company.

III.     DAMAGES means the monetary and compensatory portion of any judgment, award or settlement, provided always that DAMAGES shall not include:

A.     penalties, fees, sanctions or criminal fines, however, the COMPANY shall pay up to $10,000 in the AGGREGATE for the POLICY PERIOD for awards under RULE 11 of the Federal Rules of civil procedure or its State counterpart;

B.     matters deemed uninsurable;

C.     any form of non-monetary relief;

D.     DAMAGES rendered pursuant to the Racketeer Influenced and Corrupt Organizations Act of 1970 (commonly known as RICO), Title 18 U.S.C. Section 1960, at seq., or any similar federal or state statute or law.

IV.     DISCIPLINARY PROCEEDING means any proceeding by a regulatory or disciplinary official or agency to investigate charges made by a client or former client alleging professional misconduct in rendering or failing to render PROFESSIONAL SERVICES as a lawyer.

V.     INSURED means:

A.     the NAMED INSURED;

B.     any past or present partner, officer, director, member of a professional association, stockholder, employee, independent contractor or of counsel of the NAMED INSURED, but only as respects professional services rendered on behalf of the NAMED INSURED;

CVX-LAW-100(12/2004)                                                                                    Page 2 of 10

SNIC000015

C.    any lawyer listed in the application or added after the effective date that is a partner, officer, director, member of a professional association,' stockholder, employee, independent contractor or of counsel of the NAMED INSURED as respects PROFESSIONAL SERVICES rendered by such individual while associated with a PRIOR LAW FIRM subject to the retroactive date endorsement.

D.    Any lawyer who has retired from the NAMED INSURED, but only as respects PROFESSIONAL SERVICES rendered prior to the date of retirement and on behalf of the NAMED INSURED or a predecessor Firm;

E.    the heirs, executors, administrators and legal representatives of any INSURED in the event of any INSURED'S death, incapacity or bankruptcy, but only with respect to PROFESSIONAL SERVICES rendered prior to such INSURED'S death, incapacity or bankruptcy and only to the extent that such INSURED would otherwise be covered by this policy.

VI.    NAMED INSURED means the person or entity shown in Item I of the Declarations and any PREDECESSOR FIRM thereof.

VII.    PERSONAL INJURY means false arrest, detention or imprisonment, wrongful entry or eviction or other invasion of private occupancy, abuse of process, malicious prosecution, libel, slander and breach of privacy.

VIII.    POLICY PERIOD means the period from the effective date of this policy to the expiration date as set forth in the Declarations or earlier termination date, if any, of this policy.

IX    PREDECESSOR FIRM means any legal entity, which was engaged in the practice of law to whose financial assets and liabilities the firm listed as the NAMED INSURED in the Declarations is the majority successor in interest.

X.    PRIOR LAW FIRM means any law firm or professional corporation engaged in the private practice of law for which any lawyer listed in the application was a partner, officer, director, member of a professional association, stockholder or employee prior to such lawyer joining the NAMED INSURED.

XI.    PROFESSIONAL SERVICES means any services arising out of the conduct of the INSURED'S profession as a Lawyer or as a Lawyer acting in the capacity of an Arbitrator, Mediator, Title Insurance Agent, or Notary Public, or as a member, director, or officer of any Bar Association, its governing board or any of its committees. The definition of PROFESSIONAL SERVICES shall also include services any INSURED performs while preparing materials and presenting seminars for Continuing Legal Education credit.

XII.    RETROACTIVE DATE means the date, K specified in the Declarations or in any endorsement attached hereto, on or after which any wrongful act, error, omission or PERSONAL INJURY must have occurred in order for CLAIMS arising there from to be covered under this policy. CLAIMS arising from any wrongful act, error, omission or PERSONAL INJURY occurring prior to this date are not covered by this policy.

XIII.    WRONGFUL ACT(S) means any actual or alleged:

A.    act;
B.    error,
C.    omission;
D.    misstatement;
E.    misleading statements;
F.    neglect or breach of duty; or
G.    personal injury.

XIV.    TOTALLY AND PERMANENTLY DISABLED means that an INSURED is so disabled as to be wholly prevented from rendering PROFESSIONAL SERVICES, provided that such disability:

A.    has existed continuously for not less than six months;

B.    is reasonably expected to be continuous and permanent; and

C.    did not result from self-inflicted injury, attempted suicide or alcohol or drug abuse.

SNIC000016

# EXCLUSIONS

This policy does not apply to:

I.     any CLAIM that results in any final judgment or final adjudication against any INSURED based upon or arising out of any criminal, dishonest, fraudulent or malicious WRONGFUL ACT. This exclusion does not apply to any INSURED who is not so adjudged;

II.    any CLAIM arising out of any WRONGFUL ACT occurring prior to the effective date of this policy if:

     A.    the matter had previously been reported to any insurance company or,

     B.    if the INSURED at or before the effective date knew or could have reasonably foreseen that such WRONGFUL ACT might be expected to be the basis of a CLAIM. However, this paragraph B. does not apply to any INSURED who had no knowledge of or could not have reasonably foreseen that any such WRONGFUL ACT might be expected to be the basis of a CLAIM;

III.   any CLAIM arising out of any WRONGFUL ACT committed or alleged to have been committed by any INSURED who was a partner, officer, director, stockholder or employee of a PRIOR LAW FIRM If there is other valid and collectable insurance under any other policy or policies covering that INSURED for DAMAGES and/or CLAIMS EXPENSES for such CLAIM, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise;

IV.    any CLAIM arising from bodily injury to, or sickness, disease, or death of any person. This exclusion does not apply to mental illness, emotional distress or humiliation caused by PERSONAL INJURY;

V.     any CLAIM for loss of, injury to, or destruction of tangible property or for loss of use thereof,

VI.    any CLAIM arising out of any INSURED'S activities as an officer, director, partner, manager or employee of any company, corporation, operation, organization or association other than the NAMED INSURED or PRIOR LAW FIRM except as a member, director or officer of any Bar Association, its governing board or any of its committees;

VII.   any CLAIM made by any INSURED under this policy against any other INSURED under this policy unless such CLAIM arises out of PROFESSIONAL SERVICES rendered to such other INSURED as a client;

VIII.  any CLAIM arising out of any INSURED'S capacity as a public official or any employee of a governmental body, subdivision or agency unless any INSURED is deemed to be such solely because any INSURED has rendered legal services to such governmental body and the remuneration for such legal services inures to the benefit of the NAMED INSURED;

IX.    any CLAIM arising out of the alleged certification or acknowledgement by any INSURED, in his or her capacity as a notary public, of a signature on a document which the INSURED did not witness being placed on the document;

X.     any CLAIM based upon or arising out of any intentional breach of underwriting authority by any INSURED in the INSUIRED'S capacity as a title insurance agent;

XI.    any CLAIM arising out of conversion, misappropriation or improper commingling of client funds;

XII.   any CLAIM a rising out of the INSURED'S activities or capacity as a fiduciary under the Employee Retirement income Security Act of 1974 and any amendments, regulations or orders issued pursuant thereto. This exclusion shall not apply in the event such INSURED is deemed to be a fiduciary solely by reason of legal advice rendered to any employee benefit plan;

XIII.  any CLAIM arising out of legal services or advice rendered by any INSURED in connection with any business enterprise not shown on the Declarations:

     A.    which is, was or will be owned in whole or in part by any INSURED or any member of any INSURED'S immediate family;

     B.    which is, was or will be in any way controlled, operated or managed by any INSURED or any member of any INSURED'S immediate family including the ownership, maintenance or use of any property in connection therewith; or

     C.    in which any INSURED or any member of any INSURED'S immediate family is, was or will be a partner or employee.

SNIC000017

This exclusion does not apply if, at the time that such legal service or advise was rendered, the NAMED INSURED or any INSURED, separately or in combination, or any immediate family member had a total pecuniary or beneficial Interest of 15% or less in such business enterprise.

## LIMITS OF LIABILITY AND DEDUCTIBLE

**I.   LIMITS OF LIABILITY**

A.   The company's limit of liability shown in the Declarations and described below shall apply in excess of the deductible. CLAIMS EXPENSES and amounts paid in satisfaction of CLAIMS are subject to the applicable limits of liability.

B.   All CLAIMS EXPENSES shall first be subtracted from the limits of liability, with the remainder, if any, being the amount available to pay DAMAGES.

C.   The liability of the Company for the combined total of DAMAGES and CLAIMS EXPENSES for each CLAIM first made against any or all INSUREDS during the POLICY PERIOD, including the Extended Reporting Period, if purchased, shall not exceed the amount stated in the Declarations for each CLAIM.

D.   The liability of the Company for the combined total of DAMAGES and CLAIMS EXPENSES shall not exceed the amount stated in the -Declarations as "aggregate" as a result of all CLAIMS first made against any and all INSUREDS during the POLICY PERIOD, and all Extended Reporting Periods, if purchased.

**II.   DEDUCTIBLE**

The deductible stated in the Declarations is applied to each CLAIM and AGGREGATE and shall be paid by the NAMED INSURED. The deductible shall be first applied to all CLAIMS EXPENSES with the remainder, if any, then to be applied to Damages. Payment of the deductible or portions thereof shall be made by the NAMED INSURED within thirty (30) days of receipt of demand by the Company. The limits of liability set forth in the Declarations are in addition to and in excess of the deductible.

**III.   MEDIATION-ARBITRATION**

If the COMPANY and the NAMED INSURED agree to use Mediation or Arbitration to resolve a CLAIM brought against any INSURED and is such-CLAIM is resolved thereby, the deductible shall be reduced by 50% for such CLAIM subject to a maximum reduction of $26,000.

**IV.   CLAIMS EXPENSES**

CLAIMS EXPENSES are within the limits of liability and not in addition hereto. Such CLAIMS EXPENSES shall reduce the available limit of liability.

**V.   MULTIPLE OF INSUREDS, CLAIMS AND CLAIMANTS**

A.   The inclusion of more than one INSURED in any CLAIM or the making of CLAIMS by more than one person or organization shall not operate to increase the limits of liability and deductible.

B.   Two or more CLAIMS arising out of a single WRONGFUL ACT or a series of related WRONGFUL ACTS shall be treated as a single CLAIM.

C.   All such CLAIMS whenever made shall be considered first made on the date on which the earliest CLAIM arising out of such WRONGFUL ACT was first made and all such CLAIMS are subject to the same limits of liability and deductible.

**VI.   REIMBURSEMENT TO COMPANY**

If the Company has paid any amounts as DAMAGES in satisfaction of any CLAIMS in excess of the applicable limit of liability, or has paid DAMAGES within the amount of the applicable deductible, the NAMED INSURED shall be liable to the Company for any and all such amounts and, upon demand, shall pay such amounts to the Company.

SNIC000018

**CONDITIONS**

I.  **INSURED'S DUTIES PRECEDENT TO COVERAGE**

As a condition precedent to the availability of coverage under this policy, an INSURED'S duties in the event of a CLAIM are as follows:

A.  If a CLAIM is made against any INSURED, the INSURED must give prompt written notice to the Company. However, breach of this condition shall not result in a denial of coverage with respect to any INSURED who had no knowledge of the CLAIM. Nothing contained herein shall be construed as limiting the reporting requirements of paragraph I.A of INSURING AGREEMENTS.

B.  Notice to the Company must be directed to:

First Indemnity Insurance Services, Inc.
First Indemnity Insurance Agency, Inc.
87 Oxford Street
Lynn, MA 01901
Phone: (781) 581-2500 Fax: (781) 595-2295

Notice shall include every demand, notice, summons or other process received by any INSURED.

C.  No INSURED shall, without prior written consent of the Company, make any payment, admit liability, settle any CLAIM, assume any obligation, agree to arbitration or any similar means of resolution of any dispute, waive any rights or incur any CLAIMS EXPENSES on behalf of the Company.

II.  **INSURED'S DUTIES SUBSEQUENT TO CLAIM**

A.  All INSUREDS shall cooperate with the Company in the defense, investigation and settlement of any CLAIM.

Upon the Company's request, the INSURED, shall submit to examination or questioning, attend hearings, depositions and trials and assist in effecting settlement, securing and giving evidence and obtaining the attendance of witnesses in the conduct of suits, mediations or similar proceedings.

B.  All INSUREDS shall assist the Company in effecting any rights of indemnity, contribution or apportionment available to any INSURED of the Company.

III.  **REPORTING OF POTENTIAL CLAIMS**

A.  If, during the POLICY PERIOD, any INSURED first becomes aware of any wrongful Act which might reasonably give rise to a CLAIM against any INSURED under this policy and gives written notice of such WRONGFUL ACT to the Company during the POLICY PERIOD, any CLAIMS subsequently made against any INSURED arising out of that WRONGFUL ACT shall be considered to have been made during the POLICY PERIOD.

B.  Written notice of potential CLAIM shall include:

1.  the specific WRONGFUL ACT, including the date(s) thereof. and

2.  the injury or damage that may reasonably result: and

3.  the date and circumstances by which any INSURED became aware of the WRONGFUL ACT.

SNIC000019

**IV.     EXTENDED REPORTING PERIOD**

A.   If this policy is cancelled or non-renewed by either the Company or the NAMED INSURED, then the NAMED INSURED shall have the right to purchase an optional Extended Reporting Period for reporting CLAIMS made against any INSURED under this policy. The additional premium for the Extended Reporting Period is as follows:

| Extended Reported Period | | Additional Premium |
|---|---|---|
| One year | (12 months) | 100% of the last annual premium of this policy |
| Two years | (24 months) | 175% of the last annual premium of this policy |
| Three years | (36 months) | 200% of the last annual premium of this policy |
| Unlimited | | 250% of the last annual premium of this policy |

B.   If the NAMED INSURED purchases the Extended Reporting Period, the coverage shall apply only to CLAIMS for WRONGFUL ACTS which occurred prior to the end of the POLICY PERIOD and on or after the RETROACTIVE DATE, if any, which are otherwise covered by the policy and which are first made against any INSURED and reported to the Company during the Extended Reporting Period.

C.   This right to purchase the Extended Reporting Period is subject to the following conditions:

1.   the policy was cancelled or non-renewed for reasons other than non-payment of premium;

2.   any deductible or other amounts owed the Company have been paid;

3.   the INSURED(S), has complied with all *of* the terms and conditions of the policy;

4.   the NAMED INSURED must send written notice to the Company of the Intention to purchase the Extended Reporting Period accompanied by the additional premium. Written notice and premium payment must be received by the Company no later than sixty (60) days after the POLICY terminates.

5.   The Extended Reporting Period does not:

(a)   increase or reinstate the limits of liability; or

(b)   extend the policy period.

Any CLAIM made during the Extended Reporting Period shall be deemed to have been made during the immediately preceding POLICY PERIOD. The entire premium for this option shall be deemed fully earned at the commencement *of* the Extended Reporting Period.

**V.     NON-PRACTICING EXTENDED REPORTING PERIOD OPTIONS**

A.   Subject to the conditions stated in this Paragraph and in Paragraph F, of this Section V, any individual owner, partner, officer, director, stockholder, shareholder, member of a professional association or employee of the NAMED INSURED who, during the POLICY PERIOD, retires from or voluntarily ceases, permanently and totally the private practice of law, shall be entitled, at no additional premium, to an unlimited period for reporting CLAIMS first made against this INSURED. The right to this retirement Non-Practicing Extended Reporting Period is subject to the following conditions:

1.   the INSURED has been continuously. insured by the Company for at least three full consecutive years;

2.   the policy was not cancelled for non-payment of premium or non-renewed;

3.   the INSURED exercising this option has complied with all of the terms and conditions of the policy; and

4.   the INSURED gives written notification of retirement or the termination of the private practice of law, within sixty (60) days after the POLICY terminates.

SNIC000020

B.     This Non-Practicing Extended Reporting Period option is provided until the INSURED shall resume the private practice of law or until the death of such INSURED, in which case paragraph D of the section shall apply.

Under this option only, the deductible requirement of the policy will be waived for CLAIMS first made against the INSURED during this Non-Practicing Extended Reporting Period.

The per claim and aggregate limit of liability of this Non-Practicing Extended Reporting Period option shall be one hundred percent (100%) of the policy's per claim and aggregate limit of liability as shown on the Declarations on the inception date of the expiring policy.

C.     Subject to the conditions stated below and in Paragraph F of this Section V, any individual partner, officer, director, stockholder, shareholder, member of a professional association or employee of the NAMED INSURED who, during the POLICY PERIOD, retires or otherwise ceases the private practice of law, shall have the right to expand the time for reporting CLAIMS first made against this INSURED per the following schedule. The additional premium for this Non-Practicing Extended Reporting Period is as follows:

| Extended Reporting Period | | Additional Premium |
|---|---|---|
| One year | (12 months) | 100% of per lawyer annual premium of this policy |
| Two years | (24 months) | 175% of per lawyer annual premium of this policy |
| Three years | (36 months) | 200% of per lawyer annual premium of this policy |
| Unlimited | | 250% of per lawyer annual premium of this policy |

If an INSURED exercises this Non-Practicing Extended Reporting Period option, the coverage shall apply only to CLAIMS for WRONGFUL ACTS, which occurred prior to the end of the POLICY PERIOD and on or after the RETROACTIVE DATE, if any, which are otherwise covered by the POLICY and which are first made against this INSURED and reported to the Company during this Non-Practicing Extended Reporting Period.

This right to purchase this Non-Practicing Extended -Reporting Period is subject to the following conditions:

1.     the policy was not cancelled for non-payment of premium or was non-renewed;

2.     the INSURED exercising this Non-Practicing Extended Reporting Period option has complied with all of the terms and conditions of the policy;

3.     the INSURED exercising this Non-Practicing Extended Reporting Period option must send written notice to the Company of the intention to purchase this Non-Practicing Extended Reporting Period accompanied by the additional premium. The Company must receive written notice and premium payment no later than sixty (60) days after the POLICY PERIOD expires.

The per claim and aggregate limit of liability of this Non-Practicing Extended Reporting Period option shall be one hundred percent (100%) of the this policy's per claim and aggregate limit of liability as shown on the Declarations on the inception date of the expiring policy.

D.     Subject to Paragraph F of this Section V, if an INSURED dies during the POLICY PERIOD as a result of reasons other than self-inflicted injury, suicide, or alcohol or drug abuse, then the period for reporting CLAIMS is expanded at no additional premium until the executor or administrator of the estate is discharged, provided that the estate, heir or administrator gives written notification and written proof of the date of death to the Company within (9) months of the INSURED'S death.

E.     If an INSURED becomes TOTALLY AND.PERMANENTLY DISABLED during the POLICY PERIOD, and has been continuously insured by the Company for at least two (2) consecutive years, then the period for reporting CLAIMS is expanded at no additional premium until the death of the INSURED or until the INSURED is no longer TOTALLY and PERMANENTLY DISABLED, provided that:

1.     the INSURED or the INSURED'S legal guardian provides written notice of the disability to the Company no later than sixty (60) days after the termination date of the POLICY PERIOD;

2.     the INSURED or the INSURED'S legal guardian provides a physician's written certification of the disability including the date the disability commenced; and

SNIC000021

3.    the INSURED agrees to submit to a medical examination of the Company's expense by any physician(s) designated by the Company.

The Company retains the right to contest the certification made by the Insured's physician and it is a condition precedent to this coverage that the INSURED agree to submit to medical examinations by any physician designated by the Company.

F.    The Extended Reported Period does not:

1.    increase or reinstate the limits or liability; or
2.    extend the policy period.

Any Claim made during the Extended Reporting Period shall be deemed to have been made during the immediately preceding POLICY PERIOD. The entire premium for this option shall be deemed fully earned at the commencement of the Extended Reporting Period.

The additional premium and deductible requirement for this Non-Practicing Extended Reporting Period will be waived for an INSURED who is leaving the private practice of law to become either a state or federal judge.

## VII.    SUBROGATION

In the event of payment by the Company under this policy, the Company shall be subrogated to all INSUREDS' rights of recovery against any person or organization. All INSUREDS shall cooperate with the Company and do whatever is necessary to secure such rights and shall do nothing to prejudice such rights.

## VII.    CHANGES

The terms of this policy shall not be waived or changed except by endorsement issued to form a part of this policy.

## VIII.    ASSIGNMENT

Assignment of interest under this policy shall not bind the Company unless its consent is endorsed hereon. If, however, an INSURED shall die or be adjudged incompetent, this policy shall cover the INSURED'S legal representative as the INSURED with respect to liability previously incurred and covered by this policy.

## IX.    CANCELLATION

A.    This policy may be canceled by the NAMED INSURED by surrender thereof to the Company or by mailing to the Company written notice stating when thereafter such cancellation shall be effective. If this policy is canceled by the NAMED INSURED, the Company may retain a proportion of the premium greater than pro rata.

B.    This policy may be canceled by the Company for non-payment only by mailing to the NAMED INSURED at the address stated in the DECLARATIONS written notice stating when, not less than ten (10) days prior to when the cancellation Is being effected by reason of the NAMED INSURED'S nonpayment of premium. The mailing of notice as aforementioned shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the POLICY PERIOD. If the Company cancels, earned premium shall be computed pro rata.

C.    Delivery of written notice by the Company shall be equivalent to mailing.

D.    Premium adjustment may be made at the time cancellation is effected or as soon as practical thereafter.

## X.    NON-RENEWAL

A.    If the Company elects not to renew this policy, the Company will mail a notice of non-renewal stating the reason(s) for non-renewal to the NAMED INSURED at least (30) days before the expiration of this policy.

B.    This notice will be sent to the NAMED INSURED at the last mailing address known to the Company by:

1.    Certified Mail;

2.    First Class mail if the Company has obtained from the post office a date-stamped proof of mailing showing the NAMED INSURED'S name and address.

SNIC000022

C.     Notice of non-renewal need not be mailed or delivered if the NAMED INSURED has:

    1.   Replaced coverage elsewhere; or
    2.   Requested termination in writing.

## XI.     OTHER INSURANCE

Except f or those CLAIMS specifically excluded pursuant to Exclusion III, if there is other insurance applicable to a CLAIM covered by this policy, this policy shall be deemed excess insurance over and above the applicable limits of liability of all such other insurance unless such other insurance is written only as specific excess insurance over the limits of liability provided in this policy.

## XII.    ACTION AGAINST THE COMPANY

A.     No action shall lie against the Company unless, as a condition precedent thereto, the INSURED shall have fully complied with all the terms of this policy, nor until the amount of the INSURED'S obligations to pay shall have been Finally determined either by judgment against the INSURED after actual trial or by written agreement of the NAMED INSURED, the claimant and the Company.

B.     Nothing contained in this policy shall give any person or organization any right to join the Company as a codefendant in any action against any INSURED to determine any INSURED'S liability.

## XIII.   MERGERS, ACQUISMONS AND THE ADDITION OF NEW ATTORNEY(S)

All mergers and acquisitions with other firms and the addition of new attorney(s) occurring throughout the POLICY YEAR must be reported to the Company or its Agent In writing within thirty (30) days of the merger, acquisition or the addition of new attorney(s), or the next anniversary of this policy, whichever is sooner. The Company shall have the right to adjust the premium, terms, conditions and exclusions to reflect any shift in exposure created by such merger, acquisition or addition of the new attorney(s).

## XIV.   ENTIRE AGREEMENT

By acceptance of this policy, all INSUREDS reaffirm as of the effective date of this policy that:

A.     the statements in the application including all information communicated by the INSURED to the Company, attached hereto and made a part hereof, are all INSUREDS' agreements and representations,

B.     this policy is issued in reliance upon the truth and accuracy of such representations; and

C.     this policy embodies all agreements between all INSUREDS and the Company or any of its agents relating to this insurance.

## XV.    APPLICATION REPRESENTATIONS

The Insured's represent that the statements and representations contained in the application are true and shall be deemed material to the acceptance of the risk or the hazard assumed by the Insurer under this Policy. This Policy is issued in reliance upon the truth of such statements and representations. The Insured agree that If the Application contains statements or representations that are untrue, this Policy shall be void and of no effect whatsoever.

## XVI.   BANKRUPTCY OR INSOLVENCY

Bankruptcy or insolvency of any INSURED or of any I NSURED'S estate shall not relieve the Company of any of its obligations hereunder.

SNIC000023