UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JOAN STORMO, as assignee of PETER T. CLARK, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 19-10034-FDS |
| v. | ) ) | |
| STATE NATIONAL INSURANCE COMPANY, | ) ) ) ) | |
| Defendant. | ) ) | |

ORDER ON DEFENDANT'S MOTION
FOR JUDGMENT NOTWITHSTANDING VERDICT

**SAYLOR, C.J.**

This is a dispute over coverage under a "claims made" insurance policy with a "prompt written notice" requirement. Jurisdiction is based on diversity of citizenship.

After a trial, a jury found that defendant State National Insurance Company breached its legal-malpractice policy with its insured, Peter T. Clark. The jury awarded $1,106,138.10 to plaintiff Joan Stormo, Clark's assignee.

State National has moved for judgment notwithstanding the verdict. It argues that Stormo was not entitled to recover because Clark failed to give timely notice of the claim, as required by the policy.[1]

The policy at issue is a "claims made" policy (as opposed to an "occurrences" policy)

---

[1] It further argues, in the alternative, that its liability to Stormo must be limited to $305,198.60, the amount remaining under the policy. Because the Court is granting the motion for failure to give timely notice, it does not reach the alternative ground.

that provides coverage for claims made against the insured within the relevant period. The policy requires that notice of such a claim be given to the insurer during the policy period or within 60 days thereafter, and that in any event the insured must give "prompt written notice" of such a claim.

Here, the claim was made in October 2014, and notice was not given by the insured until December 2015, nearly fourteen months later. The notice was therefore provided well outside the time limits of the policy.

Unfortunately for plaintiff, Massachusetts law provides for strict enforcement of specific notice requirements in a "claims made" policy. That is true even if the insurer had actual notice of the claim; even if it suffered no prejudice from the late notice; and without regard to the possibility that strict enforcement might lead to an unfair result. Indeed, earlier this month, the First Circuit, applying Massachusetts law, affirmed those very principles. *See President and Fellows of Harvard College v. Zurich American Insurance Co.*, 2023 WL 5089317 (1st Cir. Aug. 9, 2023).

Whether that is a sound policy is certainly open to question. But as the same First Circuit opinion noted, any modification of the policy is a matter for the Supreme Judicial Court, not a federal court sitting in diversity. *Id.* at *5. Accordingly—and with considerable sympathy for plaintiff and her family, who have suffered significant financial harm that may never be redressed—the Court will grant the motion for judgment notwithstanding the verdict.

I.      **Background**

In simplified terms, the factual background is as follows.

Joan Stormo hired Peter Clark, an attorney, to represent her in the sale of real estate to KGM Custom Homes, Inc., in 2004 and 2005. The sale failed to close, due in substantial part to the conduct of Clark. KGM then sued Stormo and Clark. *See* First Amended Complaint, *K.G.M.*

*Custom Homes Inc. v. Peter T. Clark.*, Bristol Superior Ct., BRCV2010-1084.

State National had issued a legal malpractice policy to Clark. The policy required State National to

> pay on behalf of any INSURED all DAMAGES in excess of the deductible which any INSURED becomes legally obligated to pay as a result of CLAIMS first made against any INSURED during the POLICY PERIOD and reported to the Company in writing during the POLICY PERIOD or within sixty (60) days thereafter, by reason of any WRONGFUL ACT occurring on or after the RETROACTIVE DATE, if any.

(Policy at 1). The policy had a $1,000,000 limit on each claim.

The policy provided that

> [i]f a CLAIM is made against any INSURED, the INSURED must give prompt written notice to the Company. However, breach of this condition shall not result in a denial of coverage with respect to any INSURED who had no knowledge of the CLAIM.

(*Id.* at 6).[2]

State National investigated, defended, and settled *KGM v. Clark* on behalf of Clark, which reduced the amount available under the policy to $305,198.60.

On October 6, 2014, after *KGM v. Clark* had settled, Stormo sued Clark for legal malpractice and violation of Mass. Gen. Laws. ch. 93A in Massachusetts Superior Court. Clark did not report the malpractice action against him to State National until December 1, 2015, almost fourteen months later.

---

[2] It also provided that it does not apply to

> any CLAIM arising out of any WRONGFUL ACT occurring prior to the effective date of this policy if . . . the INSURED at or before the effective date knew or could have reasonably foreseen that such WRONGFUL ACT might be expected to be the basis of a CLAIM. However, this paragraph B. does not apply to any INSURED who had no knowledge of or could not have reasonably foreseen that any such WRONGFUL ACT might be expected to be the basis of a CLAIM.

(*Id.* at 4).

3

On January 7, 2016, State National disclaimed coverage for the malpractice action pursuant to the policy's prompt-written-notice requirement and the prior-knowledge exclusion. Clark retained his own defense counsel.

On June 27, 2018, the Superior Court entered two judgments in favor of Stormo in her action against Clark:  judgment on her malpractice claim for $1,243,416.62 and judgment on her Chapter 93A claim that was later amended to $3,769,627.53.  The court also assigned to Stormo any claims that Clark may have had against his professional-liability insurance carriers.[3]

On January 7, 2019, Stormo filed this action against State National, contending that it breached the insurance contract with Clark by refusing to defend and indemnify him in the malpractice action.  Her complaint asserted two claims:  breach of contract and violation of Mass. Gen. Laws ch. 93A.  The Court granted summary judgment in favor of State National on the Chapter 93A claim.

On February 14, 2023, following a five-day trial, a jury found in favor of Stormo on her breach of contract claim.  The jury awarded Stormo $1,106,138.10.

State National has moved for judgment notwithstanding the verdict under Fed. R. Civ. P. 50(b), arguing (1) that Stormo was not entitled to recover under the malpractice-insurance policy because Clark breached its reporting requirements, and (2) in the alternative, that its liability to Stormo must be limited to $305,198.60, the coverage amount remaining under the policy.[4]

## II.     Legal Standard

A court may grant judgment as a matter of law after a trial.  Fed. R. Civ. P. 50(b).  A

---

[3] "It is permissible and not uncommon for an insured to assign his or her rights against an insurer to the injured party."  *Boyle v. Zurich American Ins. Co.*, 472 Mass. 649, 653 n.6 (2015).

[4] State National moved for judgment as a matter of law on those issues at the close of Stormo's evidence at trial and has properly renewed that motion under Rule 50(b).

court should grant judgment as a matter of law "if a reasonable person could not have reached the conclusion of the jury." *White v. New Hampshire Dep't of Corrections*, 221 F.3d 254, 259 (1st Cir. 2000). The court must "construe the facts in the light most favorable to the jury verdict and draw any inferences in favor of the non-movant." *Sánchez v. Foley*, 972 F.3d 1, 10 (1st. Cir. 2020).

### III.    Analysis

State National contends that because Clark did not provide timely notice of the malpractice action, it was not obligated to defend and indemnify him. It further argues that it was not required to demonstrate prejudice to avoid coverage.

As noted, the policy requires the insured to give notice to State National within certain time constraints if a claim is made against the policyholder. (Policy at 6). A Massachusetts statute, Mass. Gen. Laws ch. 175, § 112, provides that the failure of an insured to "seasonably notify" the insurer may not result in a denial of coverage unless the insurer "has been prejudiced thereby."[5] Nonetheless, Massachusetts case law draws a distinction between different types of policies and different types of notice requirements, and the Supreme Judicial Court has held that § 112 does not apply to "claims made" policies with specific notice requirements. A review of the principal cases is set forth below.

---

[5] Specifically, the last sentence of § 112 provides as follows:

> An insurance company shall not deny insurance coverage to an insured because of failure of an insured to seasonably notify an insurance company of an occurrence, incident, claim or of a suit founded upon an occurrence, incident or claim, which may give rise to liability insured against unless the insurance company has been prejudiced thereby.

Mass. Gen. Laws ch. 175, § 112.

A.      **Supreme Judicial Court Decisions**

1.      ***Johnson Controls, Inc. v. Bowes***

In *Johnson Controls, Inc. v. Bowes*, 381 Mass. 278 (1980), the plaintiff sued an insurer to enforce a legal-malpractice judgment against its insured. The insured had waited seven months after being sued to notify his insurer of the claim. *Id.* at 279. The insurer disclaimed coverage, asserting that the insured had failed to provide timely notice as required by the policy. *Id.*

The policy at issue provided that "[i]n the event of an occurrence, written notice [with information concerning the occurrence] shall be given by or for the Insured to the [insurer] . . . as soon as practicable" and that "[i]f claim is made or suit is brought against the Insured, the Insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative." *Id.* at 279 n.2. The policy was thus an "occurrence" policy with an "as soon as practicable" notice requirement.

The court held as follows:

> [W]here an insurance company attempts to be relieved of its obligations under a liability insurance policy not covered by [Mass. Gen. Laws. ch. 175, § 112], on the ground of untimely notice, the insurance company will be required to prove both that the notice provision was in fact breached and that the breach resulted in prejudice to its position.

*Id.* at 282.[6] In explaining its rationale for that holding, the court noted that "[a]lthough a majority of courts adhere to a strict contractual interpretation of notice provisions as a condition precedent to an insurer's liability, there is a recent trend to issue eschew technical forfeitures of insurance coverage unless the insurer has been materially prejudiced by virtue of late

---

[6] The first two sentences of § 112 apply to any "motor vehicle liability policy . . . [and] any other policy insuring against liability for loss or damage on account of bodily injury or death, or for loss or damage resulting therefrom, or on account of damage to property," and address certain matters not relevant here. Mass. Gen. Laws. ch. 175, § 112. The last sentence, as noted above, provides that an insurer may not deny coverage due to a late notice unless it has been prejudiced; that sentence is not, on its face, limited to the types of policies identified in the first two sentences. The *Johnson Controls* court suggested, but did not expressly hold, that the third sentence was so limited. 381 Mass. at 280.

6

notification." *Id.* at 280.  It quoted from a Pennsylvania Supreme Court opinion observing that an insurance policy is not a "private contract[] in the traditional sense," because it is "not a negotiated agreement; rather[,] its conditions are by and large dictated by the insurance company to the insured." *Id.* at 281 (quoting *Brakeman v. Potomac Ins. Co.*, 472 Pa. 66, 72 (1977)).

The *Johnson Controls* court did not distinguish between claims-made and occurrence-based policies, or between different types of notice requirements.  *Id.* at 280-82 (discussing various cases and secondary sources addressing notice clauses in insurance generally).

### 2. *Chas T. Main, Inc. v. Fireman's Insurance Co.*

Ten years later, the SJC narrowed that holding considerably.  In *Chas. T. Main, Inc. v. Fireman's Fund Ins. Co.*, 406 Mass. 862 (1990), the insured plaintiff had performed engineering services for a city.  The city was sued by a subcontractor on that project, and in September 1984, the city brought suit against the insured.  *Id.* at 863.  The insured provided notice to its primary insurer, but did not provide it to its excess insurer until March 1987.  *Id.*  The excess insurer denied coverage on the ground that the notice was not timely.  *Id.*

Although the reported opinion does not contain the exact language of the policy, the court noted that it was a "claims made" policy that required the insured to "report a claim within the policy period or a stated period thereafter."  *Id.* at 866.

> The court began its analysis by noting that
>
> [t]here are, in general, two types of notice requirements found in policies.  One is a requirement that notice of the claim be given to the insurer "as soon as practicable" after the event which gives rise to coverage.  This type of notice requirement is almost always found in occurrence policies and frequently is found in claims-made policies.  The other type of notice provision requires reporting of the claim during the term of the policy or within a short period of time (thirty or sixty days) following the expiration of the policy.  This type of notice is always found in claims-made policies and is never found in occurrence policies.

*Id.* at 864.  The court concluded that the second type of notice provision (that requires reporting

7

of the claim during the term of the policy or within a short period of time thereafter) is intended to allow an insurer to "minimize the time between the insured event and the payment" so that the insurer can prospectively set accurate rates. *Id.* at 865. It then held that an insurer was not required to show prejudice if a claim was reported outside of the time period specified in the policy, because the filing of a late claim undermines "the primary purpose of insuring claims rather than occurrences." *Id.*

The court rejected the argument that the last sentence of Mass. Gen. Laws ch. 175, § 112—"An insurance company shall not deny insurance coverage to an insured because of failure of an insured to seasonably notify an insurance company of . . . [a] claim . . . unless the insurance company has been prejudiced thereby"—required a different result. Instead, it stated:

> We think, however, that § 112 applies only to the "as soon as practicable" type of notice and not to the "within the policy year" type of reporting requirement which is contained in the policy under review . . . . A requirement that an insurer on a claims-made policy must show that it was prejudiced by its insured's failure to report a claim within the policy period or a stated period thereafter would defeat the fundamental concept on which claims-made policies are premised. The likely result would be that claims-made policies, which offer substantial benefits to purchasers of insurance as well as insurance companies, would vanish from the scene. It would be unreasonable to think that the legislature intended such a result.

*Chas. T. Main*, 406 Mass. at 865-66. Finally, it rejected "any suggestion that we should declare as a matter of common law, *see* [*Johnson Controls*], that, to defeat coverage under a claims-made policy, an insurer must show that it was prejudiced by its insured's noncompliance with a 'within the policy year' notice requirement." *Id.* at 866 n.3.[7]

---

[7] The SJC has reaffirmed the holding of *Johnson Controls*—that the insurer must demonstrate prejudice to avoid coverage even if the insured failed to comply with the notice requirements of the policy—with respect to "occurrence"-based policies on multiple occasions. *See, e.g., Darcy v. Hartford Ins. Co.*, 407 Mass. 481 (1990); *Sarnafil v. Peerless Ins. Co.*, 418 Mass. 295 (1994); *Boyle v. Zurich American Ins. Co.*, 472 Mass. 649 (2015).

### 3. *Tenovsky v. Alliance Syndicate, Inc.*

In *Tenovsky v. Alliance Syndicate, Inc.*, 424 Mass. 678 (1997), the plaintiff was injured at a construction site. He alleged that the insured, a subcontractor, was responsible for his injury. *Id.* at 678. The plaintiff sought a declaratory judgment that the insurer was obliged to defend and indemnify the subcontractor. *Id.* at 679. The insurer argued that it was not so obligated because it had not received notice of the lawsuit against the insured until two and one-half years after the plaintiff had sent claims letters to the insured, and one and one-half years after the policy period expired. *Id.* at 680.

The policy at issue was a "claims made" policy, providing that "in the event that a claim is made against the insured, the insured must ensure that the insurer receives 'prompt written notice' of the claim." *Id.*

The court held that the insurer was not required to provide coverage. It noted that "[s]urely[ ] 'prompt' notice of 'claims made' requires that notice to the insurer be given no later than sixty days following the expiration of the policy period." *Id.* at 681. It found that the policy at issue was "not materially different from the policy considered" in *Chas. T. Main*. *Id.*

> Both policies require that the claim, the insured event, be reported to the insurer during the term of the policy or at least promptly after its expiration. It is apparent from the language of the [policy], just as it is apparent from the policy considered in *Chas T. Main, Inc.*, that the purpose of both policies' notice provision is to produce "fairness in rate setting" by minimizing "the time between the insured event and the payment." This case is controlled by *Chas. T. Main, Inc.* No further determination of prejudice to the insurer need be made.

*Id.*

### B. *Harvard v. Zurich American*

That line of Massachusetts cases was recently applied by the First Circuit in *President and Fellows of Harvard College v. Zurich American Insurance Co.*, 2023 WL 5089317 (1st Cir. Aug. 9, 2023). There, Harvard was the insured on an excess policy that provided coverage on a

"claims made and reported" basis. *Id.* at *1. The policy covered claims that were made and reported to the insurer within the policy period (one year) and for a 90-day period thereafter. *Id.* at *2.

The university was sued in November 2014 for violating federal anti-discrimination law in its admissions processes, and promptly notified its primary insurance carrier. *Id.* It neglected, however, to notify the excess carrier until May 2017, long after the relevant policy period and the 90-day window had expired. *Id.* The excess insurer denied coverage on the ground that Harvard had failed to provide timely notice. *Id.*

Harvard then filed suit in federal district court, alleging breach of the policy. The district court granted summary judgment to the insurer. *Id.* On appeal, Harvard argued (1) that "the district court misapplied Massachusetts law when it determined that strict compliance with the excess policy's notice requirement was a prerequisite to coverage," and (2) "as a fall back . . . propose[d] an alternative interpretation of the notice requirement and contend[ed] that issues of material fact remain as to whether that requirement was satisfied." *Id.* at *3. The First Circuit rejected both contentions.

As to the first argument, the court found that under Massachusetts law, "an insurer is not required to show prejudice before denying coverage due to an insured's failure to comply with the notice requirement of a claims-made policy." *Id.* Harvard argued that because the principal purpose of the notice requirement is to permit the insurer to set its rates based on accurate information, strict enforcement of the requirement "[should] not apply to circumstances in which in insurer has actual notice of a claim and can use that information to set its rates, notwithstanding the insured's failure to comply with the policy's notice requirement." *Id.* at *4. The court rejected that position summarily:

> Arguing that the policy's notice requirement should not be enforced because Zurich may have had actual notice of the claim is simply another way of arguing that Zurich was not prejudiced by the lack of timely written notice. To honor such an argument would impermissibly collapse the critical distinction that the SJC has made between occurrence-based and claims-made policies.

*Id.* (footnote omitted).

Harvard further argued that "to enforce the notice requirement in Zurich's excess policy would contravene sound public policy," because "[o]pportunistic insurers would be incentivized . . . to draft convoluted notice provisions in the hope of duping customers into defaulting on their coverage." *Id.* at *5. As to that argument, the court observed:

> Whatever the merits of this contention—and we take no position on it—it is for Massachusetts courts, not for a federal court, to weight the policy implications of Massachusetts law. In diversity cases, we are followers: we must apply clear rules of law as those rules have been articulated by the highest court of the relevant state.

*Id.* (citation omitted).[8]

Finally, Harvard attempted to argue on appeal that the policy's notice requirement was ambiguous as to how a claim is to be "reported" to the insurer, and that "further discovery might reveal that a newspaper or other media outlet 'reported' the claim to Zurich by covering the story for the general public." *Id.* As to that claim, the court held that Harvard had forfeited the argument by raising it for the first time on appeal. *Id.*

### C. Whether Clark Complied with the Policy's Notice Requirements

In light of that legal framework—and particularly in light of the First Circuit's opinion in *Harvard*—it is difficult to see how the jury verdict here can stand.

As noted, the policy is a "claims made" policy; it covers claims "made . . . during the

---

[8] The court also noted that Harvard had elected to file the action in federal, rather than state, court, thereby forgoing the opportunity to argue for a modification of Massachusetts substantive law. *Id.* at *5.

11

POLICY PERIOD." (Policy at 1). It requires that such claims be "reported . . . during the POLICY PERIOD or within sixty [ ] days thereafter." (*Id.*). It further requires that the insured "give prompt written notice [of a claim] to [defendant]." (*Id*. at 6).

It is undisputed that notice of the claim was not given during the policy period, or within the sixty days that followed. And while it is unlikely that State National did not have actual notice of the claim, and there is no evidence that it was prejudiced in any way, those facts are legally irrelevant; all that matters, in this context, is the date that the claim was reported. And that date—which was fourteen months after the end of the coverage period—was well outside the time limits of the policy.

Under the circumstances, the Court sees no alternative but to grant the motion for judgment notwithstanding the verdict. While that is not an obviously sensible result, it is required by the terms of the policy and by Massachusetts law.

In short, because Clark's notice to the insurer of the malpractice action was too late, the policy does not provide coverage. By extension, plaintiff Stormo, as his assignee, cannot claim the benefits of the policy. Defendant is therefore entitled to judgment notwithstanding the verdict.

### IV.   Conclusion

For the foregoing reasons, the motion of defendant State National Insurance Company for judgment notwithstanding the verdict is GRANTED.

**So Ordered.**

Dated: August 25, 2023

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Chief Judge, United States District Court